Based on today's docket, it's the case of Henry the Marriage of Diane Carroll Morrow v. Daniel Wittner. And we have Mr. Rich Thompson for the appellant, and Mr. Dennis Fields for the appellant. Mr. Thompson, you may proceed when you're prepared to do so. Good morning. I'm pleased to be court. I'm Rich Thompson. I represent Diane Morrow, the wife in this case. And I'd like to begin addressing a few of the points that were raised in the appellee's brief rather than presenting our case. Sam's the husband here, and one thing that I've found odd in Sam's argument is that he seems to continue to argue for a contribution concerning the red-butted house or the marital home. The trial court awarded him $84,000 as part of Diane's retirement for his interest in the marital home. We argue that the home in red-butt is Diane's separate property that she purchased with her own money, basically. What I want to focus on here, though, is Sam's argument for a contribution, which to me seems to indicate that if he's asking for a contribution as to his improvements of that house, he's effectively saying, hey, Diane, I'm making improvements to your house. I expect to be paid for them. So even after getting $84,000 from the trial court supposedly for his supposed capital house, he's asking to be reimbursed for improvements that he made. And I think this claim for contribution, which appears in his brief and appears in the case in the trial court, shows that in his mind, that house wasn't his. It was Diane's house. And the intention of the parties is, I think, paramount in classifying the property as marital or not. And throughout the case, it's been clear that in his mind, it was not marital property. He cites the Smith case as part of his theory, but Smith also says that you can't have reimbursement for contribution. Even if you have a basis for contribution, you don't get reimbursement just because you have increased the value of the other estate. There also has to be, I quote, affirmative acts by both parties to show that this indeed was contribution and that reimbursement is appropriate. And in our case, we don't have those affirmative acts. Sam also argues in his brief, page 10, for transmutation, which I guess goes along with his maybe contribution theory. But again, when you're talking transmutation, you're talking two different marital estates. So the fact that he got $84,000 for his half of the house, to me, makes it strange that he's asking for transmutation. He doesn't go into tracing bonds or anything like that, which he would need to to support that theory. But it just seems to me confused. I think even in Sam's mind, he knew the house wasn't his. So we think the trial court's award of $84,000 to him for his alleged share of the house should be reversed. He also makes the point that Diane used her wages to pay the mortgage and that therefore the home became marital. And I think he cites a drug. And in fact, that case concerned whether or not accumulated sick days and vacation days for which we got paid, was that money wages. So that case really has nothing to do with the issue of classifying a house, marital or non-marital, in a dissolution based on the alleged source of income as to how the house was paid for. Finally, one of the issues in the case is this quick claim that Sam executed. He says this is for tax or business reasons, but our response would be that you can't just look at the deed or the money or any individual fact in the case. You have to look at the constellation of facts which lead to the conclusion the house was Diane's, long before she was married to Sam. She married Sam in 1998. In 1995, she bought a house in Oklahoma. Then in 1998, before she married Sam, she bought another house in Texas. Her money, nobody else's money. Then she marries Sam. Two years later, they buy the Redbud house, which she uses the proceeds from her Texas home. So she had an Oklahoma house, a Texas house, the Redbud house. And we say under the law, the Redbud house was purchased with her separate funds. Therefore, it is her separate property. That's a good theory under the law if we have the facts to support it. I think you could also use the theory that the Redbud house was obtained in exchange for non-marital property. Namely, the Oklahoma house, which was the non-marital house purchased before Diane had married Sam. I cite the Cecil case in the reply brief for that theory. And finally, I think you could use the theory that the Redbud house was excluded from the category of marital property by a valid agreement of the parties. This is one of the factors the statute says you should consider. Sam executed the quick claim deed after he had, this is in the record, after he had told Sam that, well, I'm going to start making payments. When Diane purchased the home, Sam never paid anything on the mortgage. He admits this. He admits he never paid anything for the real estate taxes. He admits that he didn't pay the insurance. The only claim he makes for doing something for the house is this contribution theory. But he admits he never paid for it. Well, then he apparently changed his mind and said, well, I'm going to start making payments. And then in exchange for the promise, the house, I think, was in joint tenancy for a while. Well, that never happened, so Sam did a quick claim to his interest in the house to Diane. So I think the deed, the fact that he didn't make any payments, the fact that Diane had separate houses for which she paid this, all these facts together must be looked at to lead to the conclusion that the home in Red Bond should not have been awarded to Sam, but it should have been found to be Diane's separate property. The Fifth District has a case precedent that says even if the parties hold titles, that doesn't mean that the property is to become American, and that's our situation here. Another issue that was raised in the case was the issue of maintenance. The trial court reserved the issue of maintenance, but it did it for an unlimited time. It did it without making any findings, and it did it without there being any petition for maintenance. The law is that the trial court can't reserve maintenance indefinitely. It has to be limited somehow. You set a time for review of the issue, if nothing else, and by failing to do so, what we think the trial court erred or the trial court should have done is deny maintenance to both parties. It had the facts in the record to deny maintenance. Our brief, although I apologize if in editing the brief there were a couple of paragraphs that I think appear twice in this section, which of course should not happen, but we've got over two pages of facts of Sam's work history, and in his contribution claim. He said he spent, I think, $68,000, $66,000 on the improvements to the house. He tilled the fields. He built the fence. He did work on the inside. He dug out trees. He had to have the tractor as his separate property because he needed it for work. His brief goes on about all the work he can do. So the trial court had facts before it to show that Sam was very proud of his ability to work. He said, I quote, I'm not an invalid. No, I'm not ready to be put off the pasture. So the trial court had the facts before it that would have enabled it to say, Sam, you don't deserve maintenance, and that's the ruling the trial court should have made rather than reserving it for an indefinite time. Did the trial court in any way articulate why it was reserving maintenance when maintenance was not even asked for? I don't think there's anything in the record that addresses that. No, there's no petition. I think that the order was prepared by Sam's counsel and that was in the order in the trial court. At the trial, did he ask the court to reserve maintenance? I don't think that's in the record. I was not the trial lawyer, but from my familiarity with the record, I don't think that's in it because I think I state that in the brief. If the court, the public court here, feels that Sam should be given something for the house, it should remember that there's really no evidence of value in the improvements that he made other than his memory. And there's a section in the reply brief that addresses that where there had been objections made because of discovery problems and the trial court effectively excluded that evidence. So there really isn't good basis in the record for awarding Sam what he asked for in contribution other than what he supposedly remembered. I think also that in looking at the briefs, a reply brief really is the most important because it goes into some detail in addressing issues raised in Sam's brief, which I think are very important.  There, Sam's testimony about the personal property, again, which he admitted, it said whatever we got during the marriage, I considered merit of property. Well, in itself, that might be acceptable, but he applied that even to things that he knew were gifts to Diane or gifts to Diane's mother. Diane had a storage locker that he entered without authorization, which he admitted he found some receipts. Didn't have a property, but he had receipts. He included them in the property list. He went online, determined property values. They had a lot of hard work that he had purchased during the marriage, and he used those figures to determine value rather than taking anything like the present value. So we think that the valuation that Sam indicated in his brief for the personal property were inflated and should not be used in any ruling. I understand you weren't trial counsel, but do you agree with his statement on page 4? It says, at trial, all the parties agreed, including Diane's attorney, that the property was merit of property prior to the execution of the quitclaim deed. I can't cite you a text for disagreeing with it, so I don't. I can't cite a text for disagreeing with it either. And the reason the quitclaim deed was because he said it. He had bad credit, and they couldn't refinance it if he was on it. Is that right? That's an alternative explanation of the quitclaim deed. But again, then I say, look at the quitclaim deed in the context of all the other factors. No tax payments, no mortgage payments, no insurance. Diane had a house here, had a house there. Now she hasn't read the house. So I think when you put it into context, the conclusion is the house is Diane's. The conclusion is that it wasn't merit of property? Correct. They agreed that it was? They did not agree that it was, except that when Sam had said it was going to make payments on the mortgage, which did not happen. I don't know the background of that. That surprised me. I don't know the background of that statement. But the facts that were cited are all there, so that's the evidence. Are there any other questions? Because I don't have anything else to present. I don't think so. Mr. Thompson, you'll have the opportunity for a rebuttal. All right. Thank you. Mr. Pugh. Good morning. Good morning. Mr. Chaffin? Yes. My name is Dennis Hill. Justice Wexner. Is it? It's Wexner. I've never had the pleasure of arguing in front of you before. Pleasure to meet you. Pleasure to meet you. Good morning. Good morning. Good question. Justice, and I'm going to go right to it. There was an agreement. Here's right from the transcript. This is Volume 2 of Volume 4, page 137 of the transcript of the court. Well, property that is acquired during the merger is presumed to be mergers. Mr. Hayes, who is the client's trial defense, presumes to be. It is. Court, really, the issue of whether there was marital funds or non-marital funds used by the property is irrelevant, right? Your theory is that he divested himself of the marital interest by this quick claim deed. Mr. Hayes. Exactly. Court goes on. Mr. Hayes, this property, at one time when they purchased it, was joint tenancy. Shortly after that, he conveyed his interest. Your trial defense. Don't you agree with me? At that point, it is marital property. Mr. Hayes, at that point, it was. And your theory is that somehow it became non-marital property after that. Mr. Hayes, through the issuance of a quick claim deed. What sort of basis would there be for it becoming non-marital? Mr. Hayes. A weight. Therefore, page 139, line 12. We all agree it was marital property prior to April 18, 2001. Right?  Right. That's in the record, Your Honor. That was Mr. Hayes. Mr. Hayes. Position at that time at the trial court. And the trial court ruled that any evidence that I would put forward as to any contributions would be prior to 2001 would be irrelevant. So he restricted the way in which I could present my case. They had an agreement. That was their theory at that time. Your Honor, now they're coming in and they want to change the theory before this court. Now, Your Honor, they can't do that. Now, I would suggest to this court that there is sufficient evidence in the record to support that agreement. Not only that they made it, but that that agreement was proper. And that the purchase of the property itself was through a check that was issued, a remitter issued to Sam Weidner, my client, and Diane Marlowe, jointly. What that check was for, there was some testimony in the evidence at that point in time after, you know, this agreement. That was limited. It was all fair. But the testimony was this, is that it was for moving expenses and various expenses of the parties, as well as, you know, from the Texas property. Some profits from the Texas, or I guess it would be profits from the Texas property. But we did not go into contributions of Sam Weidner to the Texas property, what he would have been reimbursed for, what his interest in that property was. Because at that point in time, it's no longer relevant to the case before the court. Now the issue became, from that point forward, was there a valid agreement? And, you know, to exclude this property, you know, that we have now transferred the property from a meritable property, or transmitted it to a non-meritable property, and there was no reason. Sam said the only reason I entered into that was because she said, Diane and Marlowe, that we could get a better interest rate. We could save ourselves a couple thousand dollars a year if we refinanced. And he agreed to do that. And that was his only understanding of what it was that he was doing. Not that he was making it non-meritable. He specifically testified. I had no intention of waiving my right to the, you know, the meritable interest in the property. It was mine the whole time. We were just titling it her name because of mine. Because we could get a better rate. We could get a better interest rate on Marlowe. We could refinance it because she was more credible. Now, I believe that first issue is to the real property. The second issue is, I think, the personal property, and I raised this briefly. And what Diane is now doing, she's now saying, she's objecting to the way Sam valued some of the property and that some of it she claims was gifts from herself to herself at trial. I mean, she said, I gave myself this gift. The trial court didn't agree. I don't know if they agreed to that or not. But the trial court, we put together for the trial court at the trial court's request what was called Joint Exhibit No. 1. And that's what the trial court used to determine the valuation of the property. It's what we put on there as valuation. And Diane was given an opportunity. Diane valued some of the property. A lot of the property that she now objected to, she refused to place a value on. And the trial court even offered Diane additional time. Do you need additional time to work on this? And she said, no. What I want is everything to be auctioned. Page 333 in the transcript. I asked that it all be auctioned. That was what the trial court said, I will hear your argument. One additional time. Now she's coming in here arguing that somehow this is not fair. The valuations. When she refused to put the valuations on for herself. Again, she cannot come to this court, take a position in the trial court, and change it here. The real issue in this case is the reservation and maintenance. And that's the real issue for this court to look at. Because this district has not looked at that issue. At least I can find the case. Maybe, gentlemen, your parts are better than I am. You may be better than I am. The only case that I could rely on is the Lord case. Out of the second district. And there the justices looked at it. The trial court had reserved maintenance. In that case. Because there was a reasonable suspicion. That the property being awarded may not be sufficient. Because of a medical condition that the wife in that case had. That had not come into, had become completely debilitated. But there was this, you know, the trial court had a suspicion. And the appellate court in the second district, when they looked at it, they said, First off, the trial court needs to have this ability in this situation to address the issue. It has to be able to reserve in these circumstances. So that if, as in that case, and in this case, where we have a medical condition. That may come into fruition, or may be debilitated. What was the trial court's finding as to the basis that appropriate circumstances. There was no finding. The statute says there has to be. And I'm saying, no, the Lord case does not have, does not say that. Well, the statute does. It says a finding by the court that appropriate circumstances exist. But there was no specific factual finding. And I'm not going to tell you that Judge Dorff did that. I'm not going to tell you. And as far as, I did file a petition for maintenance. This was argued at the beginning of the case. Now, as far as me asking a specific motion for him to reserve on maintenance. The only thing that I did ask in my plea is the catch-all, gentlemen. I keep wanting to say gentlemen. The catch-all. And for whatever reason, the court deemed just and equitable under the circumstances. So, did I make, and I'm not going to, again, I'm not going to lie. There's no reason. But that would be the only basis for the trial court to do that. So, you filed a petition for maintenance? Yes. But it was never raised or argued at the hearing I take it? No, the maintenance was argued. Maintenance was argued throughout, I mean, at the proposed trial. I argued for maintenance. And I argued for a temporary maintenance for a temporary period of time. And I also argued that Sam, we don't know, Sam may not be able to get insurance because of heart condition. He was covered under her insurance at that time. There were a lot of issues as to his medical condition. Sam had multiple heart attacks. He had not worked in a period of time. He hadn't worked since 2005. But he wasn't dead yet. I mean, he could get out there and he could contribute. But he couldn't carry, or he couldn't work for somebody else. He couldn't work an eight-hour day with somebody else. And that's what happened. They raised the issue, he got fired, but that's what happened in his last job. That he couldn't work a full eight-hour day. And had been missing a lot of work. And got fired. And then Sam and Diane, Diane requested assistance. Sam took his retirement. And he hadn't worked outside of the home since 2005. Now, had he been contributing? Did he have skills? Yes, ma'am, he did. This is a man, like I said, he wasn't dead yet. He was willing to get out there. But he had never worked, he hadn't worked a real job since 2005. So this is what the trial court's looking at and saying, I'm going to reserve maintenance in this situation because of the underlying medical condition. And the fact that this gentleman hadn't worked in four years at this time outside of the home. The last time he had worked outside of the home, he wasn't able to hold out the job. And that was the testimony from everyone involved. So under these circumstances, I believe the court, there were sufficient facts for the court to reserve on the issue of maintenance. But Your Honor, you're absolutely correct. It does state in the statute. But I'm saying that there is support in the record for the court to do this, to reserve on this issue. With that, thank you. Thank you. Thank you, Mr. Field. Mr. Thompson, you have rebuttaled. Just a few brief points. First, on the counsel for Diana Green, a trial of the property at some point was marital. I think this court has the duty to come to the right results based on what the evidence is. And it's not limited by the theories of the counsel below. If there's any basis in the record for what you think the right answer is, then you have the authority to come to that conclusion. So I think what you have to look at is all of the evidence and what answer does that lead to, not what was counsel's theory on that particular day. Secondly, concerning the remitter, that was Diana's work for the IRS at that time. It was made out to both parties jointly as some IRS requirement. And it had nothing to do with paying off the house, as Sam had claimed. Thirdly, as to maintenance, Sam says in his brief, excuse me, the circuit court reserved the issue of maintenance upon Sam's own motion as a quote. Then he cites page 150 of the record. Page 150 of the record is the trial court's order. It's not a motion. I don't think there was any motion for maintenance in the case. He cites the Lord case for his theory that if there's a suspicion of illness, that's the basis for reserving maintenance. What the Lord case says, and I quote, is, as in parts, the circumstances in this case are also unique. There is a finding that a party has organic symptoms of a disease which may or may not manifest itself in a disabling disease, but that question is determinable based on expert medical testimony within a certain period of time. So in that case, there was a finding. There was a disease. It could display symptoms that might give a basis for maintenance later. That could be determined by medical expert testimony. None of those things we have in this case. Are you contesting the allegation that he had numerous heart attacks? No. We're contesting the reservation of maintenance without the finding, and put that sentence next to I'm not an invalid, which I think is a quote from Sam in the record also. So he could work. But could not the remedy be a remand for those findings? Yes, thank you. Yes. Right. And that's all I have. Thank you. Thank you both for your briefs and arguments, and we'll take the matter under advisement and under a rule of open course. We are going to be in brief.